**Bartzer v. Bartzer**

C.P. of Berks County, no. 02-14469.

*Lisa D. Gentile,* for plaintiff.
*Rebecca L. Bell,* for defendant.

LASH, *J.,* August 11, 2006—This court held a custody trial on August 2 and 9, 2006. At issue is primary custody of the parties' minor children, Hali Sarah Bartzer, born August 25, 1989, and Ethan Emerson Bartzer, born November 21, 1990. The court makes the following findings of fact:

## I. FINDINGS OF FACT

(1) Plaintiff, Alene K. Bartzer (Mother), is an adult individual who currently resides at 1619 West Leesport Road, Leesport, Berks County, Pennsylvania 19533.

(2) Defendant, Richard Bartzer (Father), is an adult individual who currently resides at 1224 Fox Road, Leesport, Berks County, Pennsylvania 19533.

(3) Father and Mother are the natural parents of two minor children, Hali Sarah Bartzer, born August 25, 1989, and Ethan Emerson Bartzer, born November 21, 1990 (Minor Children).

(4) The parties were married on August 2, 1986, separated on November 7, 2002, and were divorced on October 23, 2003.

(5) Mother currently resides with the Minor Children. She has a boyfriend named Bill Barthel, whom she has been seeing since December 2004.

(6) Father currently resides with his wife, Karen, and his two stepdaughters, Kacie L. DeWane, born October 6, 1988, and Becca DeWane, born October 6, 1988, and the Minor Children.

(7) Father and his wife met in October 2004 on the internet. They were married in January 2005 and have resided together since that time.

(8) Both parties reside in the Schuylkill Valley School District.

(9) The minor child, Hali, has Down's Syndrome. She attends a special needs school in the Muhlenberg School District because the Schuylkill Valley School District does not have programming sufficient to address her

needs. The parties are also enrolling her in the Preparation for Adult Learning Program (PAL).

(10) The minor child, Ethan, attends school at the Schuylkill Valley School District and is preparing to enter the 10th grade.

(11) Neither child is involved in daycare or latchkey. However, if Mother needs someone to watch Hali, her neighbor, Kelsey Kondraski, age 15, is available. She generally watches Hali once or twice a week from 3 p.m. to 4:30-5 p.m.

(12) The parties' residences are within five minutes of each other.

(13) Mother is employed with Travelers Insurance. A good portion of her work is done from her home. When she has to leave the home, her hours are flexible.

(14) Father works at Aramark Uniform Services as a production manager. He is a salaried employee and must work until his job duties are completed. Generally, he starts work at 9 a.m. and is done around 7:30 p.m.

(15) When Father has custody of the Minor Children during the week, because of his work schedule, he is temporarily unavailable to care for the Minor Children. His wife is also unavailable on Tuesdays and Thursdays due to her own work commitments and because her children attend Mechacton High School in another county and are engaged in several activities. As a result, during the school year when Father has custody of both Minor Children, Ethan watches Hali for a short time until either Father or Karen Bartzer arrive home.

(16) Hali is dependent such that a responsible person must be supervising her at all times.

(17) Both parties' households are suitable for rearing the Minor Children.

(18) Mother's extended family resides primarily in the Berks County area.

(19) Father's extended family resides predominately in Florida.

(20) This action was commenced by Mother on or about December 6, 2002, the action being included within the divorce complaint.

(21) On January 29, 2003, the court ordered that Mother would have primary physical custody of the Minor Children and Father would have partial custody, among other times, on alternate Thursdays from after school or 3:30 p.m. until Sunday at 4 p.m., and one evening on alternating weekdays during the week when Father does not have custody on the weekend, after school from 3:30 p.m. until 8 p.m.

(22) On August 25, 2003, the court entered an order modifying the custody arrangement granting Father partial custody on alternating weekends from Fridays at 1 p.m. until Sundays at 8 p.m., and during the week which contain Mother's weekend, Father would have custody on Tuesday and Thursday evening from 4 p.m. until 8 p.m.

(23) On or about October 20, 2003, Father filed a petition to modify the custody order, seeking revised periods of partial custody.

(24) The parties resolved Father's petition to modify by agreement, entered as an order of court on October 29, 2004, setting forth, among other things, that Father's partial custody would be revised such that he would now have alternate weekends from Friday at 3 p.m. until

Monday at 8 p.m.; on the alternate weeks following Mother's weekend from Monday at 3 p.m. until Wednesday at 3 p.m.; and Wednesday evenings from 3 p.m. until 8 p.m. with one Minor Child, and on Thursday evenings from 3 p.m. until 8 p.m. with the other Minor Child during the weeks when Father does not have the Monday through Wednesday time period.

(25) On or about March 3, 2005, Father filed a new petition to modify custody requesting that he be awarded primary physical custody of the Minor Children.

(26) On or about July 26, 2005, the court entered an order, by agreement of the parties, to remove the case from the trial ready list for the purpose of obtaining an updated psychological evaluation.

(27) By separate order on July 26, 2005, the court modified the temporary custody arrangement by entering a temporary custody order setting forth, among other things, that the parties would share legal custody, and would share 50/50 custody of Ethan on a week-on/week-off basis, with the transfer to occur Fridays at 3 p.m. Regarding Hali, Mother would retain primary physical custody with Father to have partial physical custody on alternate weekends from Friday at 3 p.m. until Tuesday at 3 p.m. In the alternate weeks, Father would have partial custody of Hali from Monday at 3 p.m. until Tuesday at 3 p.m.

(28) A psychological evaluation was performed by Phillip J. Tietbohl Ph.D., Licensed Psychologist. A written report was submitted to this court under correspondence dated March 24, 2006. Among other things, Dr. Tietbohl interviewed the parties, Ethan, Father's wife, Karen, conducted home visits of both residences and reviewed several records. He had also prepared a previ-

ous psychological evaluation for the court, dated June 30, 2004, which was considered.

## II. DISCUSSION

At issue is primary custody of the parties' Minor Children. In making its determination, this court considered the testimony of the parties, an in camera conference with the minor child, Ethan, Father's work supervisor, Mina Lisiewski, Father's wife, Karen, a telephone conference with Dr. Johanna Kelly, Hali's pediatrician, and the exhibits of the parties, including a written evaluation compiled by Dr. Tietbohl.

Father presented first. He is seeking equal time with Hali and wants to be the primary custodian of Ethan. He testified that he loves both Minor Children a great deal and wants to spend as much time as possible with them.

Regarding Hali, Father believes he is attentive to her needs, and he and his family are willing and able to provide her with stable, loving care. He would like to see Hali living at his household, engaged in activities with his family and Ethan, including going to restaurants, enjoying an extended family breakfast on Sunday mornings, going to movies, taking trips, cooking and doing the things that close families do together. He wants to increase his assistance to Hali. He suggested that Hali could learn "signing", which she began doing after watching a DVD that is geared to young children.

Father believes that Mother does not provide sufficient flexibility to allow Hali freedom to enjoy his family's activities. Because of this inflexibility, and because Hali and Ethan's schedules are different, Father believes Hali

is sometimes left out. He would like to remedy this through a modification of the order.

Regarding Ethan, Father believes that he should have primary custody. He states that Ethan has expressed a desire to reside with him for some time. This is in part due to the common interests they share, including Florida State football, sports in general, as well as the family activities already cited. He also believes he can help Ethan improve his grades through his assistance. He has suggested utilizing the Sylvan Learning Center to augment Ethan's education.

Father also believes that his method of rearing Ethan is superior to Mother's. Whenever something comes up involving Ethan, Father and Ethan sit down and discuss the matter. Father listens to Ethan's view on the issue and considers it. Ultimately, Father will make the decision regarding what is best. Ethan likes this approach, as it permits him to provide input into the issue, and because it manifests a respectful treatment of Ethan as a young man. Conversely, Mother's method is to make decisions on her own and impose them on Ethan, which Ethan feels is arbitrary and unfair.

Father would like to see Ethan have some autonomy to visit between households. In other words, if Father has custody of Ethan but Ethan wants to spend some time with his Mother, this should be permitted without condition, except in those limited situations where Ethan's time has already been committed for a specific purpose. While Father is prepared to do this, he perceives that Mother rigidly adheres to the schedule set by court order, and when Ethan complains she responds: "You can't go over to your Father's now because it's my time."

Father also believes that Mother thwarts cooperation by having a defensive attitude. He cites her refusal to participate in mediation.

Mother is seeking to have the custody arrangements stay the same. Regarding Hali, she notes that she has been the primary caretaker of Hali since her birth, while the parties were together, and now after the parties have separated. She claims that Father was more invested in Ethan than in Hali until very recently. Mother tends to Hali's daily needs and also engages in many activities with her, including taking her to the petting zoo, her family farm, dancing and swimming. Hali has engaged in the Special Olympics for several years, with Mother providing support. Mother believes that if Hali's schedule is changed, it will be disruptive to her and could cause her anxiety.

Mother points out that Father does not have the same understanding of Hali's needs as she does. For instance, Mother believes that teaching Hali "signing" would be counterproductive, based on her conversations with Hali's doctors. Hali is engaged in speech therapy, and if she is permitted to communicate through signing, this would impede the development of her speaking. Mother also questions Father's long-term commitment, as he has spoken of ultimately moving to Florida, which would then mean that he would be limited in his access to Hali.

Mother also claims that Father is difficult in adjusting his custody schedule when necessary. She points out that Hali recently attended a prom event. This event was scheduled to occur on Father's weekend. Mother made all the arrangements and requested additional time with Hali for the prom. Father's response was somewhat

ambiguous, as he cited other plans that he already had. Ultimately, he agreed to allow Hali to attend the prom, but the situation was much more complicated than it needed to be.

Regarding Ethan, Mother acknowledges that Ethan would like to spend more time with his Father. However, she does not feel this is in his best interests, particularly since his grades and his social life need improvement. She believes that Father is too easy going. He is more of a "buddy" to Ethan than a father. Regarding Ethan's schooling, Father will not follow through as needed to ensure Ethan's successful matriculation. Further, Ethan has become a virtual recluse. He does not have any friends and spends a great deal of time on the computer, some of which is productive time where he develops his ability in graphic art, but much of the time is simply for his own entertainment.

Mother believes that Father has imposed his will on Ethan to the extent that Ethan's mission is simply to please his father. Mother states that Father was verbally abusive to Ethan in the past. Mother is concerned that Ethan has not developed his own identity.

Dr. Tietbohl concludes that it would be best for Hali if the parties would split time with her on a 50/50 basis. Regarding Ethan, Dr. Tietbohl would like to see Ethan spend more time with his father, suggesting that he spend as much as nine days out of 14 with his father.

Dr. Tietbohl believes that both Ethan and Hali should have fewer transitions. Comparing the two homes, he believes that Father's home is more suitable for rearing teenagers through adolescence, due to some of the physical characteristics which provide for greater privacy.

The paramount concern in a child custody proceeding is the best interests of the minor children. *Costello v. Costello,* 446 Pa. Super. 371, 375, 666 A.2d 1096, 1098 (1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton,* 442 Pa. Super. 381, 385, 659 A.2d 1040, 1042 (1995).

Starting first with Hali, we feel that it is important to reiterate that Hali's needs are substantial. Dr. Tietbohl described her in the following manner:

"Hali is an easygoing adolescent girl who struggles with significant information processing problems and issues associated with having Down's Syndrome. Her level of cognitive processing is in the moderately mentally retarded range. Her speech is difficult to understand. Her thinking is fairly simple and straightforward. She doesn't complain much and she can dress herself and brush her teeth independently. She can follow simple commands or requests. She walks slowly. She has fewer fears and less awareness of things in her immediate environment that could be dangerous. She will approach all kinds of animals. She is affectionate and enjoys close physical contact and hugs. She cannot be safely left on her own for very long and both parents are aware of this. She becomes frustrated with change and does best with consistency. Hali will always need close monitoring, supervision and ongoing medical care. She is in a life skills classroom at Muhlenberg High School. Both parents are hopeful Hali might obtain future employment working with animals, one of her interests. She will need direct assistance to stay involved in the community and

connected to activities and this will be necessary throughout her life. Hali is content spending time in both homes."

We find that Mother has been, and will continue to be, better able and committed to attending to Hali's needs. As stated, Mother has been the primary caretaker for Hali at all times. Mother's investment has been greater than Father's. Father does not have the same level of understanding of Hali's needs, as evidenced by the "signing" suggestion. His future commitment is uncertain, as he may be willing to move to Florida. It is clear that Mother would never consider any option that did not include Hali. While this court believes that Father is sincere in his desire to attend to Hali's needs, this court also believes that Father does not fully appreciate the level of Mother's commitment that has been a given from the time of Hali's birth to the present.

It is also clear that, under the current arrangement, Hali is thriving. Courts are reluctant to disturb existing custody arrangements which have satisfactorily served the best interests of the child. *Wiseman v. Wall,* 718 A.2d 844, 846 (Pa. Super. 1998). Accordingly, the current arrangement with Father having custody of Hali on alternate weekends from Friday at 3 p.m. until Tuesday at 3 p.m., then on the off week from Monday at 3 p.m. until Tuesday at 3 p.m., shall remain the same.

Regarding Ethan, Father should have more time with him. The bond between the two has grown quite close, and this is certainly positive. Father's parenting approach reflects an understanding of Ethan's need to know where he stands and why things are done a certain way. Contrary to Mother's assertions, Father does not treat Ethan as a "buddy", but as a parent who is interested in guiding his

son into adulthood. There was no evidence that Ethan questions or challenges Father's authority. Father's perspective may also reflect growth on his part, as the anecdotal comments appearing in Dr. Tietbohl's first report express that Father was previously much more rigid in his familial relationships.

This court recognizes that there are also some concerns surrounding Ethan, particularly his willingness to distance himself from personal relationships. His Father appears to be better capable of coaxing Ethan from his indulgence on the computer into a more social lifestyle.

Mother's intentions are well meaning, however, she faces a struggle common to a parent of a teenage child. In particular, Ethan resists and resents Mother's questioning of him, considering her actions to be intrusive. To the extent the questions deal with what is happening in Father's household, Ethan's point is well taken. To the extent the questions deal with Ethan's well-being, his schooling, his bedtime, his habits, and so forth, the questions are appropriate but will continue to frustrate Ethan when they are asked.

Both parties need to be able to trust each other's parenting capacity and judgment. Both Dr. Tietbohl and this court noticed that Mother was guarded and defensive at times. As Dr. Tietbohl stated, she may be preparing for a battle that doesn't exist. She must also be willing to meet Father halfway on matters. Her refusal to attend mediation was inappropriate.

This court recommends that Father have primary custody of Ethan, and Mother have partial custody on alternating weekends, on the same weekend she has Hali, with the times of the partial custody to partially mirror

Father's partial custody time with Hali, such that Mother will have Ethan on her weekend from Friday at 3 p.m. until Tuesday at 8 p.m., and on the alternate week from Monday at 3 p.m. until Tuesday at 8 p.m. Mother's additional time in the evening is based on Father's unavailability due to his work schedule.

This court believes that both parents, generally, have their minor children's best interests in mind. They are both intelligent and hard-working individuals. As a result, there is no reason why they cannot cooperate better for their children's sake. There were hard feelings prior to trial, and these hard feelings may have crystallized during the trial due to issues being raised and statements being made that could have burned bridges. It is important that the parties do not permit this to happen, but begin to trust each other's parenting skills, which are substantial, and respect each other's lifestyles and decisions.

We enter the following order:

## ORDER

And now, August 11, 2006, after trial held, custody of the parties' minor children, Hali Sarah Bartzer, born August 25, 1989, and Ethan Emerson Bartzer, born November 21, 1990, shall be as follows:

(1) The parties shall share legal custody.

(2) Plaintiff, Alene K. Bartzer (Mother), shall have primary physical custody of Hali.

(3) Defendant, Richard Bartzer (Father), shall have partial custody of Hali on alternate weekends from Friday at 3 p.m. until Tuesday at 3 p.m. On the alternate week,

Father shall have partial custody of Hali from Monday at 3 p.m. until Tuesday at 3 p.m.

(4) Defendant, Richard Bartzer, shall have primary physical custody of Ethan.

(5) Mother shall have partial physical custody of Ethan on alternate weekends, on the same weekend she has Hali, from Friday at 3 p.m. until Tuesday at 8 p.m., and on the alternate week from Monday at 3 p.m. until Tuesday at 8 p.m.

(6) Recognizing Ethan's maturity and his desire to spend time with both parents, this court directs that the parties shall allow Ethan some autonomy to deviate from the custody schedule to visit with the other parent when appropriate.

(7) The parties shall alternate the Christmas holiday with one parent having custody on December 24 at 1 p.m. until Christmas Day at 1 p.m., and the other party having custody from Christmas Day at 1 p.m. until 8 p.m. on December 26. Mother shall have custody on Christmas Eve in even-numbered years and Father shall have custody on Christmas Eve in odd-numbered years.

(8) The parties shall alternate custody of the Minor Children on Easter, Memorial Day, Independence Day, Labor Day and Thanksgiving. Custody times for said holidays shall be from 10 a.m. until 7 p.m. Father shall have custody for the Thanksgiving holiday in 2006 and the parties shall alternate the holidays thereafter.

(9) Father shall have custody of the Minor Children on Father's Day and Mother shall have custody of the Minor Children on Mother's Day. Custody times shall be from 10 a.m. until 6 p.m.

(10) The parties shall have the right to two non consecutive weeks of vacation each year with the Minor Children. The parties shall provide each other with at least 30 days advance notice of their choice of weeks under this paragraph. If the parties cannot agree, Mother's choice of week shall take priority in even-numbered years and Father's choice of weeks shall take priority in odd-numbered years.

(11) The holiday and vacation schedules shall take precedence over the regular custody schedule.

(12) Each parent shall ensure that the Minor Children attend their existing extracurricular activities and activities that the Minor Children have historically participated in while the Minor Children are in their custody. Any new activities shall be selected with the agreement of both parties and each party agrees not to unreasonably withhold their agreement.

(13) During periods of custody or partial physical custody, neither party shall criticize, ridicule or hold up for derision the other parent. Nor shall either parent permit, encourage or tolerate any such criticism, ridicule or derision in any way directed against the other parent by any third party in the presence of or at the residence in which the Minor Children or Minor Child, as the case may be, reside.

(14) Both parties acknowledge that the right of custody shall not include the right to enter the other party's home unless specifically invited therein by the other party. Neither party shall use derogatory language or loud language when addressing the other party.

(15) The attached appendix shall be made a part of the within order.

## APPENDIX TO ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

(1) In addition to the foregoing rights, both parties shall also have the following rights with respect to the children:

(A) The right to reasonable telephone contact with the children when they are in the other parent's custody.

(B) The right to be fully informed concerning the progress of the children in school and the children's medical status, including the right to obtain the necessary information directly from the children's school or medical practitioner; and

(C) The right to be informed in advance before any important decisions are made concerning the children and the opportunity to participate in those decisions.

(2) In the event of any serious illness of the children at any time, any party then having custody of the children shall immediately communicate with the other party by telephone or by any other means, informing the other party as to the nature of such illness, and during such illness, each party shall have the right to visit the children as he or she desires consistent with the proper medical care of the children.

(3) Neither party shall alienate nor permit to attempt to alienate the children from the other party. While in the

presence of the children, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one the children should respect and love.

(4) Both parties shall provide each other with their addresses and telephone numbers of their residences and anytime they take a trip with the children out of the jurisdiction of Berks County in excess of three days.

(5) The parties shall not conduct arguments or heated conversation when they are together in the presence of their children.

(6) The parties shall, at all times, consider the children's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying to desperately cope with the fact of his or her parents' separation, and needs help in loving both parents, rather than interference or censure.

(7) Neither party shall question the children as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the children. By this we mean that the children will not be used as spies on the other party. It is harmful to a child to be put in the role of spy.

(8) The parties should remember that they cannot teach their children proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

(9) Weekend and evening visitation shall be subject to:

(A) Arrangements will be worked out beforehand between the parties without forcing the children to make choices and run the risk of parental displeasure. However, the children shall be consulted as to their schedules when appropriate.

(B) Visitation rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the need and desire of the minor children.

(C) If a party finds himself or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the children to unnecessary apprehension and failure of expectations.

(D) The party having custody of the children should prepare them both physically and mentally for the transfer of custody to the other party and have them available at the time and place mutually agreed upon.

(E) If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and both parties should be flexible for the sake of the children.

(F) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

(10) If either party feels the other party has violated this order, they may petition the court as set forth in Pa.R.C.P. 1915.12.